**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Steven J. Lundmark, Trustee for the Heirs and Next of Kin of Bruce James Lundmark,<br><br>      Plaintiff,<br><br>vs.<br><br>Beltrami County;<br><br>Clearwater County;<br><br>MEnD Correctional Care, PLLC;<br><br>Beltrami County Sheriff Ernie Beitel and Jail Administrator Calandra Allen, in their official capacities and as agents/employees of Beltrami County;<br><br>Corrections Sgt. Mario Scandinato, Corrections Officer Chelsea Berg, Corrections Officer Michael Frees, Corrections Officer Chase Gallinger, Corrections Officer Sue Hohler, Corrections Officer Erin Meyer, Corrections Officer Riley Olson, Deputy Collin Szabla, and Deputy Kory Weikel, Beltrami County employees, all in their individual and official capacities and as agents/employees of Beltrami County;<br><br>Clearwater County Sheriff Darin Halverson and Jail Administrator Clarence LaCroix, in their official capacities and as agents/employees of Clearwater County;<br><br>Corrections Officer Romell Bennett, Corrections Officer Brenda Caskey, Corrections Officer Stacy Herman, and Corrections Officer Amy Sorenson, Clearwater County employees, all in their individual and official capacities and as agents/employees of Clearwater County; | Court File No.<br><br><br><br><br><br><br><br><br><br>**COMPLAINT WITH**<br>**JURY DEMAND** |

1

**Todd Leonard, MD, Robin Cobb, MD,
Christian Lanners, RN, and Regina Huderle,
HT, MEnD Correctional Care employees, all in
their individual and official capacities and as
agents/employees of MEnD Correctional Care,
PLLC,**

        **Defendants.**

## INTRODUCTION

For his Complaint, Steven J. Lundmark, in his capacity as Trustee for the heirs and next of kin of Bruce James Lundmark, states and alleges as follows:

1. This is an action for money damages arising out of the July 21, 2019 in-custody death of Bruce James Lundmark, which resulted from violations of well-settled federal civil rights and state law.

2. By order dated October 20, 2021, Beltrami County District Court appointed Steven J. Lundmark ("Plaintiff") as Trustee for the Heirs and Next of Kin of Bruce James Lundmark.

3. It is alleged that the individual Defendants violated Mr. Lundmark's constitutional rights under 42 U.S.C. §§ 1983 and 1988, and the Eighth and/or Fourteenth Amendments to the United States Constitution and engaged in negligence and medical malpractice leading to wrongful death.

## JURISDICTION

4. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

## VENUE

5. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

**PARTIES**

6. Decedent Bruce James Lundmark was at all material times a resident of the State of Minnesota and of full age and an inmate at the Beltrami County and Clearwater County jails in the State of Minnesota.

7. Plaintiff Steven J. Lundmark is Mr. Bruce James Lundmark's biological brother and has been appointed as Trustee for the heirs and next of kin of Bruce James Lundmark pursuant to Minn. Stat. § 573.02.

8. Defendant Beltrami County is a municipal corporation and the public employer of all individually named Beltrami-County-employed Defendants. Defendant Beltrami County is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials.

9. Defendant Clearwater County is a municipal corporation and the public employer of all individually named Clearwater-County-employed Defendants. Defendant Clearwater County is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials.

10. Defendant MEnD Correctional Care, PLLC, ("MEnD") is a Minnesota corporate entity that, at all material times, was contracted by Beltrami County to provide medical services for Beltrami County Jail inmates under the color of state law. Defendant MEnD, at all material times, employed Defendants Leonard, Cobb, Lanners, and Huderle.

11. Defendants Beitel and Allen, sued in their official capacities, and Defendants Scandinato, Berg, Frees, Gallinger, Hohler, Meyer, Olson, Szabla, and Weikel, all sued in their individual, official, and employee/agent capacities, were at all times relevant to this complaint duly appointed and acting officials/employees of Defendant Beltrami County, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Beltrami County. These Defendants may be referred to below as "individual Beltrami County Defendants."

12. Defendants Halverson and LaCroix, sued in their official capacities, and Defendants Bennett, Caskey, Herman, and Sorensen, all sued in their individual, official, and employee/agent capacities, were at all times relevant to this complaint duly appointed and acting officials/employees of Defendant Clearwater County, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Beltrami County. These Defendants may be referred to below as "individual Clearwater County Defendants."

13. Defendants Leonard, Cobb, Lanners, and Huderle, all sued in their individual, official, and employee/agent capacities, were at all material times employed by MEnD Correctional Care, PLLC, assigned to provide medical care and services to inmates at Beltrami County Jail, including Plaintiff, and were acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota, and/or Beltrami County. Defendant Dr. Leonard was the supervising physician at the Beltrami County Jail. These Defendants may be referred to below as "individual MEnD Defendants."

## FACTS

14. Plaintiff Bruce Lundmark was a Vietnam-era naval veteran. After his service, he worked in construction, carpentry and the building trades. For hobbies, he played guitar and painted. His artwork hung in a number of Bemidji area businesses.

15. Mr. Lundmark suffered from depression, anxiety and post-traumatic stress disorder. At times, he self-medicated with alcohol and drugs leading to various arrests. Because he was well known at the Beltrami County Jail, he was designated a trustee and assigned special duties and privileges when booked into the jail.

16. On June 25, 2019, Mr. Lundmark was booked into the Beltrami County Jail. His initial medical assessment documented chronic back pain, high blood pressure, depression, anxiety and post-traumatic stress disorder and listed the medications he was taking for these conditions.

17. On July 19, 2019, while at the jail, Mr. Lundmark started to experience severe and excruciating pain in his abdomen with numbness in his left leg, arm and fingers. He submitted a written request to see a nurse or physician at 4:00 pm that day. This request was never acted on.

18. On July 20, 2019 at 4:55 pm, Defendant Health Technician Regina Huderle saw Mr. Lundmark for abdominal pain, nausea, diarrhea and vomiting. She measured his vital signs and found his blood pressure to be 210/188, a hypertensive crisis that signals serious illness and requires aggressive blood pressure reduction through intravenous medication administration in a hospital setting.

19. Ms. Huderle called Defendant Christian Lanners, RN for instructions. She notified Nurse Lanners of Mr. Lundmark's blood pressure reading and abdominal pain.

20. Nurse Lanners contacted Defendant Dr. Robin Cobb for instructions. Instead of instructing her to have Mr. Lundmark transported to a hospital for his hypertensive crisis, Dr. Cobb and Nurse Lanners instructed Ms. Huderle to administer one dose of Clonidine, a pill for high blood pressure, and to recheck Mr. Lundmark's blood pressure one hour after administration. Neither Dr. Cobb nor Nurse Lanners provided instructions to Ms. Huderle regarding Mr. Lundmark's abdominal pain.

21. At 5:39 pm, Mr. Lundmark's blood pressure remained dangerously high at 188/110. Ms. Huderle administered the dose of Clonidine but did not return to recheck his blood pressure as ordered and made no effort to secure care for Mr. Lundmark's severe abdominal pain, nausea, vomiting and diarrhea.

22. That evening, Mr. Lundmark continued to experience severe abdominal pain with nausea, vomiting and diarrhea. At 7:18 pm, Mr. Lundmark came out of his cell to line up for his evening medications. While in line, he sat on the floor multiple times, holding his abdomen. When his turn arrived, he spoke to Ms. Huderle, who was passing out medications. Mr. Lundmark told Ms. Huderle that he was experiencing severe abdominal pain and diarrhea and he requested immediate medical care. Ms. Huderle still made no effort to secure medical care for Mr. Lundmark's serious symptoms.

23. At 7:37 pm, inmate C.K. went to the desk and spoke with Defendant Corrections Officer Chelsea Berg, telling her that Mr. Lundmark was in "a lot of pain and that we needed to do something about

it." Defendant Berg told C.K. that Health Tech Huderle had checked Mr. Lundmark and that he would have to wait until the next day to see a nurse.

24. At 9:50 pm, Ms. Huderle was summoned to see Mr. Lundmark, who reported experiencing seizure-like tremors along with continued abdominal pain, diarrhea and vomiting. Ms. Huderle measured Mr. Lundmark's vital signs and although his blood pressure remained elevated, she decided not to contact the on-call Registered Nurse because she decided that "his vital signs were within normal limits."

25. Throughout the night, Defendant Corrections Sgt. Scandinato and Corrections Officers Berg, Frees, Gallinger, Hohler, Meyer and Olson noted Mr. Lundmark's frequent trips to the bathroom, including explosive diarrhea and fecal incontinence. They noted he made 21 trips to the bathroom. Defendant Meyer noted an episode of "explosive discharge" during one of Mr. Lundmark's trips to the bathroom. They also noted that he moaned in pain throughout the night, kneeling on his bunk. At one point, Mr. Lundmark tied a sheet to the bedframe above his bunk to create a sling to support himself in an attempt to relieve his severe abdominal pain. Despite this, none of the Corrections Officers sought medical care for Mr. Lundmark.

26. On the morning of July 21, 2019, Beltrami County Jail sent ten inmates to Clearwater County Jail to relieve overcrowding. Despite his ongoing severe abdominal pain, vomiting and diarrhea, Mr. Lundmark was selected for transfer. At 10:00 am, Defendant Deputies Szabla and Weikel began applying shackles to Mr. Lundmark. He complained to them about his serious abdominal pain. Inmate witnesses reported having to help him stand due to pain and weakness. Deputies Szabla and Weikel stated that Beltrami County Jail had made them aware of Mr. Lundmark's illness and they told Mr. Lundmark they would relay the information to the Clearwater County Jail staff.

27. The transport to Clearwater County Jail took approximately 40 minutes. Deputies Szabla and Weikel noted in their report that Mr. Lundmark appeared to be sleeping throughout most of the trip.

28. Upon arrival, Defendant Corrections Officer Bennett noted that Mr. Lundmark was "acting a little strange…He was falling all over the place!" Officer Bennett surmised that Mr. Lundmark was possibly intoxicated even though he had been in jail for nearly a month and despite his complaints of

abdominal pain. Officer Bennett noted that he asked Szabla if he knew anything about Mr. Lundmark's condition and Szabla stated he did not. However, Beltrami County Jail records indicate that Clearwater County Jail staff was notified about Mr. Lundmark's medical condition.

29. Despite recognizing that Mr. Lundmark was experiencing a serious and acute illness, Officer Bennett placed him in a holding cell while he processed eight other inmates transferred from Beltrami County. This took approximately 4.5 hours.

30. Clearwater County Jail Defendant Corrections Officers Caskey, Herman, and Sorenson checked on Mr. Lundmark throughout his time in the holding cell as he waited to be booked in but did not mention his frequent diarrhea, kneeling and laying on the bed or other behaviors that indicated he was suffering a severe and acute illness. They, too, did not request medical care for Mr. Lundmark.

31. After booking the other transferred inmates, Officer Bennett went to bring Mr. Lundmark to the booking area. Mr. Lundmark was very dizzy and he complained that he could not feel his legs. Officer Bennett had to help Mr. Lundmark to walk to the booking area. During booking, Officer Bennett stated that Mr. Lundmark acted increasingly strange and that he complained of his stomach burning. Officer Bennett told Mr. Lundmark that he would call a nurse once he was placed in a cell.

32. Officer Bennett completed Mr. Lundmark's booking but instead of taking him to a standard cell, he decided to place Mr. Lundmark into A Block because it had a camera. Defendant Officer Caskey assisted getting him to the cell because Mr. Lundmark was very weak and having difficulty walking.

33. After placing Mr. Lundmark in Holding Cell A and propping him up in a chair, Officers Bennett and Caskey noticed that Mr. Lundmark was no longer responding to them. Officer Bennett left to get vital signs equipment and call the Beltrami County Jail. A dispatcher called for an ambulance and a Clearwater County Deputy came to the cell and began cardiopulmonary resuscitation until an ambulance arrived.

34. Throughout the resuscitative effort, large volumes of coffee-grounds blood (partially digested blood from the stomach) came from Mr. Lundmark's mouth, requiring frequent suctioning. Mr. Lundmark

...

was transported by ambulance to Sanford Hospital, where he died from gastrointestinal bleeding. He was 63 years old.

35. From the time Mr. Lundmark developed serious abdominal pain, nausea, vomiting, diarrhea and other serious symptoms, his complaints and symptoms were ignored by corrections and medical staff at Beltrami County Jail and then by corrections staff at Clearwater County Jail.

36. Defendants MEnD and Dr. Leonard intentionally created an implemented a system in which unlicensed and minimally trained Health Technicians serve as the "eyes and ears" of licensed medical staff. The only qualifications for the Health Technician position are being age 18 or older and having a high school diploma or equivalent. They receive minimal training in dispensing medications and measuring vital signs such as temperature, pulse rate, respiration rate, blood pressure and oxygenation levels. They are neither trained nor legally permitted to perform assessments, which are within of the scope of practice of Registered Nurses or more advanced licensed medical professionals. Yet, MEnD and Dr. Leonard intentionally relied on an unlicensed and unqualified Health Technician to serve as the gatekeeper for Mr. Lundmark's access to licensed caregivers. Dr. Leonard and MEnD intentionally implemented this inherently dangerous and deficient system of providing medical care to reduce medical costs, increase profits, and increase MEnD's chances of securing profitable contracts with Minnesota county jails. This deficient system of providing correctional medical care was being implemented at Beltrami County Jail in July of 2019 and directly caused and contributed to Mr. Lundmark's untimely death.

37. Defendants Cobb and Lanners failed to act on the information provided to them by Defendant Huderle. Huderle reported that Mr. Lundmark's blood pressure on July 20, 2019 at 4:55 pm was 210/188. Blood pressure readings in that range are a hypertensive crisis requiring immediate emergency treatment. Even after administering a dose of antihypertensive medication, Mr. Lundmark's blood pressure remained high. Mr. Lundmark reported seizure-like tremors and extremity numbness in addition to severe abdominal pain with diarrhea and vomiting. These are all symptoms any competent licensed medical professional would have recognized as hallmarks of

end

serious illness necessitating emergent medical care. Instead, Cobb and Lanners failed to take any action to save Mr. Lundmark's life.

38. Defendant Dr. Todd Leonard was the owner and medical director of MEnD as well as the medical director and medical supervisor for Beltrami County Jail. He failed to properly oversee the work of the other MEnD Defendants and he is personally responsible for creating a system in which under-qualified and unlicensed staff was relied upon to determine whether inmates needed care by licensed medical staff. This deficient system of providing correctional medical care was being implemented at Beltrami County Jail in July of 2019 and directly caused and contributed to Mr. Lundmark's untimely death.

39. As a direct and proximate result of Defendants' actions, Mr. Lundmark endured severe and prolonged period of physical and emotional/psychological pain and suffering, ultimately resulting in his loss of life and related damages. As a direct and proximate result of Defendants' actions, Mr. Lundmark's heirs and next of kin suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – EIGHTH AND/OR FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE VIOLATIONS AGAINST ALL INDIVIDUAL BELTRAMI COUNTY DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES, ALL INDIVIDUAL CLEARWATER COUNTY DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES, AND ALL INDIVIDUAL MEnD DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

40. Paragraphs 1 through 39 are incorporated herein by reference as though fully set forth.

41. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Plaintiff's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution through their deliberate indifference towards Mr. Lundmark's serious medical needs and through their deliberate indifference towards serious risk of injury/harm to Mr. Lundmark.

42. As a result of these constitutional violations, Mr. Lundmark and his heirs and next of kin suffered damages as aforesaid.

**COUNT 2: 42 U.S.C. § 1983 – EIGHTH AND/OR FOURTEENTH AMENDMENT (*MONELL*) VIOLATIONS AGAINST DEFENDANTS BELTRAMI COUNTY, CLEARWATER COUNTY, MEND CORRECTIONAL CARE, PLLC, AND THE INDIVIDUAL BELTRAMI COUNTY, CLEARWATER COUNTY AND MEND DEFENDANTS IN THEIR OFFICIAL CAPACITIES**

43. Paragraphs 1 through 39 are incorporated herein by reference as though fully set forth.

44. Prior to July 21, 2019, Defendants developed and maintained policies and/or customs and/or practices exhibiting deliberate indifference to the constitutional rights of persons in their care and custody, which caused the violations of Mr. Lundmark's constitutional rights.

45. It was the policy and/or custom and/or practice of Defendants to inadequately supervise and train their employees, including the individual Defendants, thereby failing to adequately prevent and discourage further constitutional violations.

46. It was the policy and/or custom and/or practice of Defendants to detain severely ill inmates at the Beltrami County Jail and Clearwater County Jail instead of admitting such inmates into a hospital for medical treatment, thereby directly causing and contributing to constitutional violations.

47. It was the policy and/or custom and/or practice of Defendants to maintain inadequate supervision of severely ill inmates at the Beltrami County Jail and Clearwater County Jail, thereby directly causing and contributing to constitutional violations.

48. Prior to July 21, 2019, Defendants, acting with deliberate indifference towards the constitutional rights of individuals in their care and custody, failed to properly train their employees to hospitalize severely ill inmates, to maintain adequate supervision of severely ill inmates, and to recognize serious and life-threatening medical symptoms requiring emergency medical care.

49. Defendants Beitel and Allen knew about Beltrami County's unconstitutional policy/custom/training practices but they failed to take corrective action to ensure the safety and wellbeing of Beltrami County Jail inmates.

50. Defendants Halverson and LaCroix knew about Clearwater County's unconstitutional policy/custom/training practices but they failed to take corrective action to ensure the safety and wellbeing of Clearwater County Jail inmates. Defendants Halverson and LaCroix knew that Clearwater County Jail staff was not trained to request immediate medical care for acutely ill inmates being booked into the Clearwater County Jail but they failed to take corrective action to ensure the safety and wellbeing of Clearwater County Jail inmates.

51. Defendant Dr. Leonard developed and implemented MEnD's unconstitutional policy/custom/training practices and he failed to take corrective action to ensure the safety and wellbeing of jail inmates under MEnD's medical care.

52. As a result of these policies and/or customs and/or practices and/or lack of training, employees of Defendants, including the individual Beltrami County, Clearwater County and MEnD Defendants named herein, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

53. As a result of these policies and/or customs and/or practices and/or lack of training, employees of Defendants, including the individual Beltrami County, Clearwater County and MEnD Defendants named herein, were not properly equipped to care for inmates with serious and life-threatening medical conditions.

54. These policies and/or customs and/or practices and/or lack of training and supervision were the cause of the violations of Mr. Lundmark's constitutional rights alleged herein.

**COUNT 3: MINN. STAT. § 573.02 – WRONGFUL DEATH CLAIM AGAINST BELTRAMI COUNTY, CLEARWATER COUNTY, AND THE INDIVIDUAL BELTRAMI COUNTY AND CLEARWATER COUNTY DEFENDANTS**

55. Paragraphs 1 through 39 are incorporated herein by reference as though fully set forth.

56. Based on the above factual allegations, Defendants negligently caused Mr. Lundmark's death. Specifically, Defendants owed Mr. Lundmark a duty of care to have his condition assessed by licensed medical professionals and to transport Mr. Lundmark to a hospital instead of detaining him

in the county jail once he displayed symptoms of serious illness. Defendants breached this duty of care when they ignored the obvious signs of Mr. Lundmark's serious illness and failed to request proper medical care for him.

57. Defendants caused Mr. Lundmark's wrongful death through their deliberate indifference towards his serious medical needs (as alleged in Counts 1 and 2 above) and/or negligence (as alleged in the preceding paragraph).

58. Defendants Beltrami County and Clearwater County are vicariously liable for the wrongful death caused by their employees/agents, the individual Beltrami County Defendants.

59. As a direct and proximate result of this wrongful death, Mr. Lundmark's heirs and next of kin have suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

### COUNT 4: MINN. STAT. § 573.02 – WRONGFUL DEATH CLAIM AGAINST MEnD CORRECTIONAL CARE, PLLC, AND THE INDIVIDUAL MEnD DEFENDANTS

60. Paragraphs 1 through 39 are incorporated herein by reference as though fully set forth.

61. Based on the above factual allegations, Defendants have committed medical malpractice against Mr. Lundmark. Specifically, Defendants owed Mr. Lundmark a duty and standard of care, as recognized by the medical community, to properly diagnose and treat Mr. Lundmark's medical condition and to transport Mr. Lundmark to a hospital instead of detaining him in the county jail. Defendants breached this duty of care when they relied on an unlicensed, minimally trained Health Technician to act as gatekeeper for Mr. Lundmark's access to care by licensed professionals and when they failed to act on reports of his very serious and life-threatening symptoms. In so doing, they denied Mr. Lundmark access to care that would have saved his life.

62. Defendants caused Mr. Lundmark's wrongful death through deliberate indifference to his serious medical needs (as alleged in Counts 1 and 2 above) and/or medical malpractice (as alleged in the preceding paragraph).

63. Defendant MEnD Correctional Care is vicariously liable for the wrongful death caused by its employees/agents, the individual MEnD Defendants.

64. As a direct and proximate result of this wrongful death, Mr. Lundmark's heirs and next of kin have suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

## RELIEF REQUESTED

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Mr. Lundmark's constitutional rights under the Eighth/Fourteenth Amendments to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from these violations, including damages for Mr. Lundmark's conscious pain and suffering and loss of life and related damages;

b. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants caused Mr. Lundmark's wrongful death and that Defendants are liable to Plaintiff for all damages resulting from these violations;

c. Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

d. Award of punitive damages to Plaintiff against all Defendants, jointly and severally;

e. Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988;

f. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: May 11, 2022

By: s/ Zorislav R. Leyderman
ZORISLAV R. LEYDERMAN
Attorney License No. 0391286
Attorney for Plaintiff
The Law Office of Zorislav R. Leyderman
222 South 9th Street, Suite 1600
Minneapolis, MN 55402
Tel: (612) 876-6626
Email: zrl@ZRLlaw.com